UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

MOHAMMAD ARIF                             §
MOHAMMAD YOUSAF,                          §
                                          §
        Petitioner,                       §
                                          §
                                          §
v.                                        §          SA-26-CV-2190-FB (HJB)
                                          §
                                          §
BOBBY THOMPSON, Warden                    §
South Texas Detention Facility;           §
MIGUEL VERGARA, Field Office              §
Director for Detention and Removal,       §
U.S. Immigration and Customs              §
Enforcement; TODD LYONS, Acting           §
Director, U.S. Immigration and Customs    §
Enforcement, MARKWAYNE MULLIN,            §
Secretary, Department of Homeland         §
Security; and TODD BLANCHE,[1]            §
Acting United States Attorney General,    §
                                          §
        Respondents.                      §

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Petitioner Mohammad Arif Mohammad

Yousaf's Petition for a Writ of Habeas Corpus (Docket Entry 1), which was referred to the

undersigned for consideration (Docket Entry 3).   The undersigned held a status conference in the

case on April 28, 2026, and took the matter under advisement.   (*See* Docket Entry 11.)   For the

reasons discussed below, I recommend that the petition be **GRANTED IN PART** and **DENIED**

**IN PART**, and that Petitioner be released from Respondents' custody.

_____

[1] Todd Blanche was appointed acting Attorney General on April 2, 2026. Blanche is therefore substituted for former Attorney General Pamela Bondi as the proper, named Respondent. *See* FED. R. CIV. P. 25(d).

## I.    Jurisdiction.

The Court has jurisdiction pursuant to 28 U.S.C. § 2241.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear . . . . challenges to the lawfulness of . . . . continued custody after a deportation order ha[s] become final.") (emphasis omitted).   The undersigned has the authority to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b).

## II.    Background.

Petitioner is a citizen of Afghanistan, who assisted the United States during its occupation of the country, providing interpretive and transportation services for troops fighting the Taliban. (Docket Entry 1, at 1–2; Docket Entry 1-2.)   When the Taliban regained control of Afghanistan in late 2021, Petitioner was forced to flee the country.   (Docket Entry 1, at 2.)

On September 9, 2024, Petitioner arrived at the United States-Mexico border.  (Docket Entry 1, at 2; Docket Entry 6-1.)   But immediately after "swimming across the Rio Grande River," Petitioner was apprehended by Border Patrol and detained pending expedited removal.   (Docket Entry 6-2, at 1; Docket Entry 6-3, at 1.)   On January 22, 2025, Petitioner claimed that he feared returning to Afghanistan.   (Docket Entry 6-3, at 2.)   On February 3, 2025, an ICE officer interviewed Petitioner, decided that his fear of being killed upon being returned to Afghanistan was not credible, and ordered that Petitioner be removed from the United States.   (Docket Entry 6-1, at 1; Docket Entry 6-3, at 2.)   Petitioner asked that the negative credible-fear determination be reviewed by an Immigration Judge ("IJ").   (Docket Entry 6-3, at 2.)   On February 11, 2025, the IJ affirmed the negative credible-fear determination.   (*Id.*)

From March 25, 2025, onward, Respondents have tried to remove Petitioner to Afghanistan.  (Docket Entry 6-3, at 2.)   On May 21, 2025, Petitioner was scheduled to be placed

on a flight to Afghanistan, but he refused to board the plane. (*Id.*) After September 12, 2025, however, Petitioner ceased to be the obstacle to Respondents' removal efforts; instead, Afghanistan revealed that it would not accept Petitioner without a "Transit Letter." (*Id.*) Respondents made five separate attempts to secure a Transit Letter from the Afghan authorities in the ensuing months, but to no avail. (*Id.*)

Petitioner filed suit on April 1, 2026, seeking a writ of habeas corpus to secure his release from ongoing detention. (Docket Entry 1.) Respondents have responded to the petition (Docket Entry 6), and Petitioner has filed a reply (Docket Entry 8).[2]

## III. Discussion.

Petitioner challenges his ongoing detention on two grounds. First, he argues that his ongoing detention violates 8 U.S.C. § 1231, as interpreted by the Supreme Court in *Zadvydas*, 533 U.S. 678. (Docket Entry 1, at 7.) Second, he argues that his ongoing detention violates his Fifth Amendment right to due process. (*Id.* at 8.) This Report and Recommendation addresses these claims in reverse order.

---

[2] When the District Court ordered Respondents to show cause for Petitioner's detention, it further ordered "that any possible or anticipated *transfer* of Petitioner . . . is immediately stayed." (Docket Entry 2, at 3 (emphasis added and original emphasis omitted).) The order further clarified, however, that it "does not stay any order of *removal* . . . and does not preclude Respondents from taking necessary steps to effect Petitioner's *removal*." (Id. (emphasis added).) Respondents have argued that the District Court's order inhibited their ability to remove Petitioner. (Docket Entry 6, at 5.) However, as the emphasized language above makes clear, the District Court's order imposed no obstacle to *removal*, it merely prohibited Respondents from *transferring* Petitioner to a different judicial district as a means of evading the Court's jurisdiction. (*See* Docket Entry 2, at 3.) In any event, upon taking the petition under advisement, the undersigned ordered that, "[t]o the extent that the Court . . . imposed a stay of removal in this case, the stay is lifted." (Docket Entry 11, at 2 (emphasis omitted).)

A.  *Due Process.*

"The Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."  *A.A.R.P. v. Trump*, 605 U.S. 91, 95 (2025) (citation modified).  "Procedural due process rules are meant to protect against the mistaken or unjustified deprivation of life, liberty, or property."  *Id.* (citation modified).  But for due process purposes, there is a "distinction between an alien who has effected an entry into the United States and one who has never entered" which "runs throughout immigration law."  *Zadvydas*, 533 U.S. at 693.  "And an alien who is detained shortly after unlawful entry," like Petitioner, "cannot be said to have effected an entry."  *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (citation modified).

For aliens like Petitioner who have not effected an entry, and who accordingly "have never been naturalized, nor acquired any domicil[e] or residence within the United States, nor even been admitted into the country pursuant to law," due process of law is comprised of no more than "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress."  *Id.* at 138 (citation modified); *cf. United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) ("[A]liens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with th[e] country.").

In short, although "noncitizens who have 'established connections' in the United States by virtue of living in the country for a substantial period acquire a liberty interest in being free from government detention without due process of law," *Rodriguez v. Bondi*, --- F. Supp. 3d ---, No. EP-26-CV-292-DB, 2026 WL 523055, at *2 (W.D. Tex. Feb. 25, 2026), "an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause than those set by Congress," *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 684 (W.D. Tex. 2025).  As Petitioner was not naturalized, a resident within the United States, or admitted into the country, for him "due

process is whatever [Respondents are] . . . authorized to do." *Barrientos v. Baltazar*, No. 5:24-CV-5, 2024 WL 5455686, at *5 (S.D. Tex. Dec. 18, 2024), *report and recommendation adopted*, No. 5:24-CV-5, 2025 WL 744703 (S.D. Tex. Mar. 7, 2025); *see Kokoreva v. Unknown Party*, No. 3:25-CV-1700-K-BN, 2025 WL 2981626, at *3 (N.D. Tex. Oct. 7, 2025) (same), *report and recommendation adopted*, No. 3:25-CV-1700-K, 2025 WL 2980642 (N.D. Tex. Oct. 22, 2025).

For these reasons, Petitioner's due process claim dovetails into his *Zadvydas* claim: both turn on whether he received the process he was due under 8 U.S.C. §1231—the provision of the INA that governs ongoing detention of aliens who have already been ordered removed.   If he did, then due process is satisfied.   If not, then he is entitled to relief regardless of his due process argument.

### B.  *Section 1231 (Zadvydas).*

Section 1231 governs the "[d]etention, release, and removal of aliens ordered removed." 8 U.S.C. § 1231(a).   That statute provides that, "[o]nce an alien is ordered removed, DHS must physically remove him from the United States within a 90-day 'removal period.'" *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (quoting 8 U.S.C. 1231(a)(1)(A)).   Subject to exceptions that do not apply here, the removal period begins when "the order of removal becomes 'administratively final.'"  *Id.* (quoting 8 U.S.C. § 1231(a)(1)(B)).   During the 90-day removal period, detention is mandatory.  *Id.* (citing 8 U.S.C. § 1231(a)(2)).

When removal cannot be accomplished during that 90-period, "the Government may continue to detain certain aliens or release them under conditions of supervision."  *Abuelhawa v. Noem*, No. 4:25-cv-4128, 2025 WL 2937692, at *4 (S.D. Tex. Oct. 16, 2025) (citing 8 U.S.C. § 1231).   Although the statute does not specify a limit on how long the Department of Homeland Security ("DHS") may continue to detain an alien after the removal period has lapsed, the Supreme

5

Court has held that such extended detentions may last no longer than is "reasonably necessary to bring about the alien's removal," *see Zadvydas*, 533 U.S. at 689.   And recognizing that not all removals can be accomplished within 90 days, the Supreme Court concluded that the Government is presumptively entitled to an additional 90 days to finish the job.   *See id.* at 701.   Accordingly, post-removal-order detentions are "presumptively reasonable" for up to "six months."   *Id.* at 701; *see Mogos v. Thompson*, No. 5:26-CV-740-JKP, 2026 WL 475079, at *3 (W.D. Tex. Feb. 13, 2026) ("Th[e] six-month period includes the 90-day removal period.").   Once an alien subject to a final order of removal has been detained for six months, release is required if "there is no significant likelihood of removal in the reasonably foreseeable future."   *Guzman Chavez*, 594 U.S. at 529 (citation omitted).

Before applying *Zadvydas*, however, the Court should consider Respondents' primary argument: that § 1231—and hence *Zadvydas*—has no bearing on Petitioner's detention. Respondents argue that § 1231 is inapplicable to Petitioner because he was ordered removed on an *expedited* basis under 8 U.S.C. § 1225(b)(1).   (Docket Entry 6, at 1–3.)   For this reason, Respondents argue, Petitioner's detention is governed solely by 8 U.S.C. § 1225(b)(1)(B)(iii)(IV), which provides that "[a]ny alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed."   (*Id.*)

The Court should reject Respondents' argument.   The plain text of § 1231 casts a wide net—establishing the rules governing detention "when an alien is ordered removed."   8 U.S.C. § 1231(a)(1)(A).   As Petitioner is an alien who was ordered removed, § 1231 would clearly apply to him.   And Respondents' contrary argument that Petitioner's detention must remain mandatory under § 1225(b) runs headlong into the Supreme Court's explanation that, although

6

"[§] 1225(b)(1) aliens are detained for further consideration of the[ir] application[s] for asylum, . . . . [o]nce those proceedings end, detention under § 1225(b) must end as well." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) (emphasis added).

Respondents do not address the language in *Jennings*.  Even if it is considered *dicta,* the Fifth Circuit has made clear that all lower courts "are generally bound by Supreme Court dicta." *McRorey v. Garland*, 99 F.4th 831, 837 (5th Cir. 2024).   And, as another court in this Division and District has already held, the language in *Jennings* "is simply incompatible with [the] position that the government can indefinitely detain a non-citizen who has been found to not have a credible fear of persecution" under § 1225(b).  *Jamshidiparvar v. Thompson*, No. 5:25-CV-1326-JKP, 2026 WL 301070, at *3 (W.D. Tex. Feb. 2, 2026) (internal marks omitted).   Instead, following *Jennings*, "the 'until removed' language of § 1225(b) contemplates that the removal will occur within the timeframe specified in § 1231(a)," and thus it "does not allow for indefinite detention." *Id.*   For these reasons, "§ 1231, and thus *Zadvydas*, applies to this case."   *Id.*

Under *Zadvydas*, Petitioner must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."   533 U.S. at 701.   "Good reason" is a "modest standard."   *Mogos*, 2026 WL 475079, at *4.   It does not require Petitioner to "rule out 'any prospect of removal—no matter how unlikely or unforeseeable.'"   *Id.* (quoting *Zadvydas*, 533 U.S. at 702).   If Petitioner provides a good reason to doubt that he will be removed anytime soon, "the Government must respond with evidence sufficient to rebut that showing."   *Id.* "This is a fact-intensive inquiry in which the likelihood of release in the foreseeable future shrinks as the post-removal period grows."   *Misirbekov v. Venegas*, 796 F. Supp. 3d 436, 439 (S.D. Tex. 2025) (citing *Zadvydas*, 533 U.S. at 701).

Here, Petitioner's 90-day removal period began on February 11, 2025, when his expedited removal order became administratively final.   Administrative finality turns "on the agency's review proceedings," *Guzman-Chavez*, 594 U.S. at 534, and as the IJ's February 11, 2025, order affirming DHS's negative credible fear determination was not appealable, it was an administratively final order under §1231.   (*See* Docket Entry 6-2, at 3 ("This is a final order[;] [t]here is no appeal from this decision.").)   The 90-day mandatory removal period therefore ended on May 12, 2025.

Petitioner does not dispute that Respondents nearly removed him to Afghanistan on May 21, 2025, or that they were ultimately unsuccessful only because Petitioner "failed to comply . . . at the San Antonio International Airport."   (Docket Entry 6-3, at 2; Docket Entry 1, at 4.)   But as of September 12, 2025, Petitioner was no longer a barrier to Respondents' removing him to Afghanistan; instead, Afghanistan refused to accept Petitioner absent a "Transit Letter."   (Docket Entry 6-3, at 2.)   Over the next five months, Respondents made five attempts to obtain a Transit Letter from the Afghan government, to no avail.   (*Id.*)

Given the above circumstances, not all of the 15 months Petitioner has been in post-removal-order custody should actually be counted against the statutory time limits, since Petitioner refused to comply with removal efforts on May 21, 2025.   *See* 8 U.S.C. § 1231(a)(1)(C) ("The removal period shall be extended . . . if the alien . . . acts to prevent the alien's removal subject to an order of removal"); *Balogun v. I.N.S.*, 9 F.3d 347, 351 (5th Cir. 1993) ("The six-month period is tolled if the alien 'hampers' his deportation.").   But it is clear from the record that, at least since September 12, 2025, Petitioner's detention counts against the presumptive statutory limits established in *Zadvydas*.   Since then, Petitioner has been in post-removal-order detention for more than 8 months—longer than the Supreme Court has held to be presumptively reasonable.

8

Petitioner has provided the Court with good reason to doubt that his removal is significantly likely in the reasonably foreseeable future.   After all, through no fault of Petitioner's, Respondents have been unable to secure the necessary travel documents to remove him to Afghanistan.   (*See* Docket Entry 6-3, at 2.)   And as Petitioner points out, Respondents have made no effort to explore third countries as alternative removal destinations, notwithstanding their statutory authority to do so.   (Docket Entry 1, at 4.)[3]

The burden therefore shifts to Respondents to produce evidence showing that Petitioner's removal is, in fact, significantly likely in the reasonably foreseeable future.   They have not done so.   Respondents point to their attempts to secure Petitioner's travel documents from the Afghan government, but while such attempts demonstrate Respondents' efforts, they also show that removal is unlikely.   Respondents offer little else to establish imminent removal, besides their insistence that, "once the Transit Letter is received," there are "no known impediments to executing Petitioner's removal order to Afghanistan."   (Docket Entry 6-3, at 2)   Respondents further offer only that they "anticipate" additional flights to Afghanistan in the future, and that they "intend" to place Petitioner on such a flight "once Afghanistan has issued a Transit Letter within the next several months."   (*Id.*)

Pending requests for travel documents do not satisfy their "burden to furnish evidence demonstrating that removal is likely in the reasonably foreseeable future."   *Trejo v. Warden of ERO El Paso E. Montana*, 807 F. Supp. 3d 697, 706 (W.D. Tex. 2025).   This is especially true where, as here, Respondents' own optimistic expectation is that they would likely not receive such

---

[3]   Section 1231(b)(1)(C) specifically authorizes removal to any "country with a government that will accept the alien" in those cases where removal to the alien's home country "is impracticable, inadvisable, or impossible." It would certainly seem inadvisable to send an Afghani refugee who aided the United States military in its fight against the Taliban back to a Taliban-controlled Afghanistan.

documents for at least "several months" (Docket Entry 6-3, at 2.) What qualifies as the "reasonably foreseeable future" in this case is substantially diminished now that Petitioner already has been detained for months longer than what is presumptively reasonable. *See Zadvydas*, 533 U.S. at 701; *Misirbekov*, 796 F. Supp. 3d at 439 ("[T]he likelihood of release in the foreseeable future shrinks as the post-removal period grows"). In such circumstances, the "potential for a travel document at some point in the future is not sufficient to justify further detention." *Fermine v. Dir. of Immigr. & Customs Enf't*, No. 2:06-cv-1578, 2007 WL 2284606, at *4 (W.D. La. May 23, 2007) (internal marks omitted).

Accordingly, Petitioner is entitled to release pursuant to 8 U.S.C. § 1231 and *Zadvydas*.

## IV.     Conclusion and Recommendation.

Based on the foregoing, I recommend that Petitioner Mohammad Arif Mohammad Yousaf's Petition for a Writ of Habeas Corpus (Docket Entry 1) be **GRANTED IN PART**, and that Petitioner be ordered **RELEASED WITHIN 48 HOURS** of the Court's order, under an order of supervision. I recommend that the petition be **DENIED IN PART** as to Petitioner's request for an award of attorney's fees, which are not available to habeas petitioners. *See Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 553 (2024)

## V.      Notice of Right to Object.

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this Report and Recommendation must be filed **within 14 days** after being served with a copy of the same, unless this time period is modified by the District Court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties.    An objecting party must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; frivolous, conclusory, or general objections may be disregarded.    *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court.    *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).    Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the district court.    *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on May 18, 2026.

Henry J. Bemporad
United States Magistrate Judge

11